UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVEN WAYNE MYRICK                                             CIVIL ACTION

VERSUS                                                          NO. 12-2692-DEK

RODNEY JACK STRAIN, JR., ET AL.

### ORDER AND REASONS

Plaintiff, Steven Wayne Myrick, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983 against Sheriff Rodney Jack Strain, Jr., Major Gregory Longino, Dr. R. Demaire Inglese, Dr. Marcus Dileo, Dr. Gary French, and Nurse Scarlett Maness. In this lawsuit, plaintiff claims that he was denied adequate medical care while incarcerated at the St. Tammany Parish Jail.

Specifically, plaintiff makes the following allegations in the complaint. On February 12, 2012, plaintiff was injured in a fall at the jail. After being examined by Dr. Dileo, plaintiff was sent to the hospital for x-rays. At the hospital, he was given a leg brace and sent back to the jail. Upon his return to the jail, the officer on duty confiscated the brace, which was then returned to plaintiff a day or two later by Nurse Maness. At that time, plaintiff asked Maness to call a doctor; however, she told him he must fill out a sick call request. After submitting several such requests, plaintiff was seen by Dr. French on February 23; however, Dr. French said that there was nothing more that could be done for plaintiff. On March 13 and April 25, plaintiff was seen by Dr. Dileo and given painful examinations, but, again, no additional medical care was provided. On May 3, plaintiff was again seen by Dr. French, who ordered an MRI. When he was next seen by Dr. French on May 9, plaintiff was told that there was nothing that could done for him. After seeing Dr. French again on June 6,

plaintiff was moved to the jail's medical dorm. The MRI was then done on June 28, and, at a follow-up visit on July 24, Dr. French explained that plaintiff had a labral tear in his hip. Plaintiff was later told that the jail would not provide hip surgery.[1]

In a supplement to his complaint, plaintiff also contended that he had to sleep on the floor for three days in October of 2012 because he could not climb into the top bunk assigned. The warden then assigned plaintiff a bottom bunk.[2]

In later supplements to his complaint, plaintiff contended that guards refused to help him when he obviously needed crutches and that the delays in providing him medical care were unreasonable.[3]

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure,[4] which plaintiff opposes.[5] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[6]

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the

---

[1] Rec. Doc. 1, pp. 5-14.

[2] Rec. Doc. 21, pp. 1-4.

[3] Rec. Docs. 24 and 26.

[4] Rec. Doc. 30.

[5] Rec. Doc. 35.

[6] Rec. Doc. 20.

2

mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather,  "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

In their motion, the defendants assert that they are entitled to judgment as a matter of law based on plaintiff's failure to exhaust his administrative remedies prior to filing suit.  The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Federal courts have taken a strict approach to the exhaustion requirement.  For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," id. at 532.  The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  The Fifth Circuit therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

The Fifth Circuit recently emphatically reiterated that the exhaustion requirement is mandatory and cannot be excused by a federal court.  The Fifth Circuit held:

> [T]here can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory.  We thus hold that Underwood has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. *District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint.*  It is irrelevant whether exhaustion is achieved during the federal proceeding.  *Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.*

Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added; footnote omitted).

4

In support of their motion, the defendants have submitted the affidavit of Gregory Longino, one of the defendants herein, in which he outlined the Administrative Remedy Procedure put in place by the St. Tammany Parish Sheriff's Office ("STPSO"):

> 3. In 1996, the STPSO adopted an Administrative Remedy Procedure ("ARP") that permits inmates to lodge grievance complaints. The procedure allows any inmate – whether they are being held by federal or state agencies after conviction or are pre-trial detainees – to request in writing a review of a complaint the inmate has about a policy, condition or incident that occurs within the jail.
>
> ....
>
> 5. A summary of the ARP is contained in the Inmate Handbook that is given to every inmate who is booked into the Jail. A true copy of that summary, as it appears in the handbook, is attached to this Affidavit.
>
> 6. A copy of the complete ARP can also be found in the Jail law library, where access is available to all inmates and was available to all inmates in February 2012.
>
> 7. The ARP, including the inmate complaint procedure, was posted in every housing unit of the jail in February 2012. Blank ARP forms were available in every housing unit and made easily accessible to all inmates.
>
> 8. An inmate can also ask any Jail deputy for a copy of the blank forms.
>
> 9. In lieu of the blank forms, inmates may submit a written communication containing the words "This is a grievance through the ARP."
>
> 10. Under the procedure, a grievance must be filed within 90 days from the date of the incident giving rise to the grievance. Any grievance filed more than 90 days after the incident is rejected as untimely.
>
> 11. The written grievance first is forwarded to the First Level Respondent, who must respond within 15 days of receipt of the grievance. This process is designated as the First Step Review.
>
> 12. If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal the response to the Affiant, in his role as Warden, within

>
> five days of the inmate's receipt of the First Step Review results. The Warden has 25 working days to reply to the appeal.
>
> 13. If an inmate is not satisfied with the results of the Second Step Review, the inmate may appeal that result to the Sheriff within five days of the inmate's receipt of the Warden's response. The Sheriff has 40 days to reply to this appeal, which is designated Third Step Review.
>
> 14. If an inmate does not receive a timely response to either of the first two steps of the process, the inmate nevertheless is required to follow through to the next step of the process.
>
> 15. Inmate Steven Wayne Myrick, the plaintiff in this lawsuit, did initiate the ARP regarding the incident giving rise to this lawsuit by filing an initial grievance, however, his efforts to obtain relief through the ARP ended there.
>
> 16. As a result, Inmate Myrick did not exhaust his administrative remedies as required by the Jail ARP concerning his claims that are the subject of this lawsuit prior to filing the lawsuit.[7]

The record clearly supports Longino's affidavit. Plaintiff attached to his original complaint an inmate grievance form dated August 27, 2012, in which he stated: "I fell in B-100 2-12-12 that's been seven months ago I have been in unessary pain now for seven month Im really tired of not being able to walk without chrutches and being in pain every day I wake up."[8] On September 11, 2012, Dr. Inglese responded to that grievance and determined that it was unfounded, explaining:

> Recently, you completed an inmate Grievance, complaining that you are in pain and are unable to walk. I have met with you on several occasions to discuss this issue. In fact, I met with you on 8/28 and again just a few days ago to explain that we are doing everything we can to expedite your follow-up appointment at LSU-Charity Hospital. Unfortunately, the jail has absolutely no control over when appointments are scheduled. We have repeatedly called, faxed, and emailed the Charity Scheduling Office to request an appointment date, but we are still waiting for an appointment slot. The doctors at Charity Hospital review all requests and

---

[7] Rec. Doc. 30-5.

[8] Rec. Doc. 1, p. 18.

> determine the urgency required and then assign an appointment date. The jail had done every single thing Charity had asked and has sent you for all requested tests (such as your 6/28/12 MRI scan). In addition, we have been extremely diligent in pursing [sic] follow up for you. However, as I have explained on multiple occasions, we cannot assign dates ourselves. You have sent in several requests, complaints, and Grievances complaining about the delay, but, as I've explained, the choice of an appointment date is determined by Charity physicians. Submitting Complaints and Grievances will not expedite your appointment. You have been given analgesic pain medications while you await you [sic] appointment, but that is all we can do, except continuing requesting an appointment – which we will do.[9]

The critical question here is whether plaintiff then proceeded to the second and third steps of the STPSO administrative remedy procedure. As noted, Longino states under oath that plaintiff did not.

The record supports Longino's contention. For example, plaintiff himself attached to his complaint a copy of Dr. Inglese's response. While that copy bears plaintiff's signature acknowledging receipt of the response on September 11, 2012, the following portion of the form which an inmate must sign and date to request the Warden's review is **blank**.[10]

The Court notes that, in his response to the defendants' motion for summary judgment, plaintiff alleged that completed all three steps of the administrative remedy procedure and stated that he was attaching documents to prove that fact.[11] However, the documents he attached prove no such thing. There is no attached copy of the required form requesting the Second Step Review by the Warden. The only document that is even arguably pertinent is a general "Request Form" dated

---

[9] Rec. Doc. 1, p. 21.

[10] Rec. Doc. 1, p. 20.

[11] Rec. Doc. 35, p. 8.

September 26, 2012, in which plaintiff stated that he "need[ed] to see the warden about my ARP about surgery."[12]  Not only is that general request not an official request for the Warden's review of Dr. Inglese's response, it would be untimely even if it were liberally construed as such, in that it was submitted after expiration of the **five-day** deadline for requesting review of the September 11 response.  Additionally, there is no documentation whatsoever showing that plaintiff proceeded to the Third Step Review by Sheriff Strain.

In summary, all plaintiff has offered on this issue is his own self-serving assertion that he exhausted all three levels of review; however, as previously noted, unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  See, e.g., Teixeira v. Gregg County Jail, 74 Fed. App'x 388, 389 (5th Cir. 2003) (plaintiff's unsubstantiated assertion that he filed an administrative appeal "is not sufficient to sustain his evidentiary burden under Fed. R. Civ. P. 56(e)").

Plaintiff's failure to pursue his grievance through all three steps of the administrative remedy procedure is determinative in this case.  As the United States Fifth Circuit Court of Appeals has noted: "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'"  Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)).  Therefore, a plaintiff's administrative remedies are not exhausted unless he has pursued his grievance through the *conclusion* of a multi-step administrative remedy procedure.  Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001); see also Hemphill v. Inglese, 359 Fed. App'x 537, 540 (5th Cir. 2010) ("[C]omplying with the first step of an administrative grievance procedure will

---

[12] Rec. Doc. 35-2, p. 10.

not suffice to exhaust administrative remedies if the grievance procedure contemplates additional steps."). Accordingly, the fact that plaintiff initiated the procedure is simply insufficient to constitute exhaustion, because he failed to pursue the procedure to its conclusion.

This Court is aware that prisoners who submit administrative grievances at times have their efforts frustrated by unhelpful and unresponsive prison officials, although the Court expresses no opinion as to whether such a situation was present in this matter. Nevertheless, the fact remains that Congress has provided that exhaustion of such remedies is required. If the federal courts were to allow inmates to circumvent available administrative procedures by proceeding directly to federal court, the goals and benefits of the exhaustion requirement would be undermined. As the United States Supreme Court noted:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

Because plaintiff failed to pursue his administrative remedies to their conclusion, thereby giving the jail officials a fair opportunity to consider and possibly resolve his claims without litigation, it is not appropriate for this Court to consider those claims.[13]

---

[13] Because plaintiff failed to exhaust his administrative remedies, the alternative grounds for dismissal argued by the defendants in their motion need not be addressed.

Accordingly, for all of the foregoing reasons,

**IT IS ORDERED** that the defendants' motion for summary judgment, Rec. Doc. 30, is **GRANTED** and that the claims against them are **DISMISSED WITH PREJUDICE**.[14]

New Orleans, Louisiana, this twelfth day of September, 2013.

                                              */s/ Daniel E. Knowles, III*
                                              **DANIEL E. KNOWLES, III**
                                              **UNITED STATES MAGISTRATE JUDGE**

---

[14] Generally, a dismissal for failure to exhaust is without prejudice; however, in that any new grievance filed by plaintiff would be time-barred under the STPSO administrative remedy procedure and his failure to exhaust therefore cannot be cured, dismissal with prejudice is appropriate. See Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995) (dismissal with prejudice warranted when administrative relief is time-barred or otherwise precluded).